(No. 12627.—Reversed and remanded.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* Myer J. Stein *vs.* THE CHICAGO TELEPHONE COMPANY *et al.*— (MYER J. STEIN, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.)

*Opinion filed April 15, 1919.*

1. PUBLIC UTILITIES—*commission investigating reasonableness of rates may require telephone company to file a schedule.* Under section 41 of the Public Utilities act the commission, seeking to establish a schedule of reasonable telephone rates, may, of its own motion or upon complaint, enter upon an investigation sufficient to enable it to acquire the information necessary for the making of such a schedule, and as a step in that investigation the commission may require the telephone company to file its schedule of rates eliminating all discriminations.

2. SAME—*when appeal is prematurely taken.* Section 68 of the Public Utilities act authorizes an appeal only from an order or decision of the commission made after a final hearing, and where the commission does not find that any particular telephone rate is or is not just or reasonable but the record shows that apparent discriminations exist, an order requiring the telephone company to file a schedule of rates eliminating all discriminations is only an interlocutory order and an appeal therefrom is premature.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

MYER J. STEIN, *pro se,* (EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMANN, ALBERT D. RODENBERG, and MATTHEW MILLS, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, (FRANK S. RIGHEIMER, and DANIEL A. ROBERTS, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by Myer J. Stein from an order of the circuit court of Sangamon county setting aside an order of the State Public Utilities Commission made July 15, 1918.

The appellant, a resident of Oak Park with a business office in Chicago and a subscriber to the service of the Chicago Telephone Company in both places, filed a complaint with the commission, alleging that the rate charged by the telephone company for telephone service from Oak Park to Austin and Mont Clare, in the city of Chicago, was five cents, while from Oak Park to other parts of the city of Chicago the rate was ten cents; that the rate for toll service from Oak Park through an exchange at 3608 Ogden avenue was nothing to Cicero, while to Lawndale it was five cents and to Rockwell ten cents, and these charges are contrary to section 38 of the Public Utilities act of the State; that they show undue preference or discrimination between localities and an inequality in charges for like and contemporaneous service; that the charges are exorbitant, unjust, unreasonable and discriminatory as to Oak Park subscribers, to individual patrons and localities, as to price and time limitation; that by two ordinances of the city of Chicago, dated November 6, 1907, and May 26, 1913, discrimination is made in favor of the city of Chicago by allowing a rebate of twenty-five per cent to the city from the rates currently charged to other subscribers of the telephone company; that by virtue of said ordinances the telephone company discriminates against certain subscribers in the city of Chicago by compelling them to pay five cents for each call up to twelve hundred calls with a graduated scale for calls in excess of that number, whereas other subscribers are permitted to have service without limit for $125 per annum. It is further alleged that said ordinances are null and void, in that they attempt to regulate rates outside of the city of Chicago. By an amendment to the petition it was alleged that unreasonable, discriminatory and illegal charges are made by the telephone company in that subscribers in some cases are not charged until the particular person called for is secured, and in other cases, where the charge made by the telephone company is twenty cents or less, the subscriber

is charged for a call whether the person called answers or not, if connection is established with the number called for.

The answer of the telephone company admitted that it charged ten cents for messages from Oak Park to all points in the city of Chicago except Austin and Mont Clare, in which cases the charge is five cents, and justified the discrimination under the terms of the ordinance of November 6, 1907, authorizing the telephone company to construct, maintain and operate its telephone wires in the city of Chicago, as amended by the ordinance of May 26, 1913, fixing the maximum rates and charges which may be charged by the telephone company at not more than ten cents for each message up to three minutes' duration from the city of Chicago to any point outside the city within fifteen miles of the city hall or within one mile of the city limits. It is alleged that Oak Park is within fifteen miles of the city hall, and in order that the charges might be the same in both directions, a like charge of ten cents is fixed for messages from Oak Park to any point within the city except as to messages to Austin and Mont Clare, in Chicago, where a charge of five cents is made, for the reason that said ordinance provides that the charge shall not be more than five cents for each three-minute message between Oak Park and Austin and Mont Clare and certain other points in the ordinance mentioned, all of which, like Oak Park, are contiguous in territory to the city of Chicago. The answer admits that the toll charge from Oak Park to Rockwell is ten cents; denies that the toll charge from Oak Park to Lawndale is five cents but alleges that it is ten cents, and alleges that there is no toll charge for messages from Oak Park to Cicero which go through the same exchange as messages from Oak Park to Rockwell and Lawndale, for the reason that the company is conducting its business in Cicero and Oak Park under the terms of certain ordinances passed December 19, 1898, and prior thereto, by the trustees of the town of Cicero, at which times the village of Oak Park

287 — 29

was a part of the town of Cicero, by the terms of which it is provided that the then limits of the town of Cicero shall be construed as constituting the limits of one of the telephone company's exchanges, so that subscribers in one part may communicate with subscribers in another part without extra charge. The answer likewise justified the alleged rebate or discount to the city of Chicago of twenty-five per cent under the terms of the ordinances referred to, and alleges that the fixed rate of $125 per year which is charged for unlimited use of certain telephones in the city of Chicago is required by the terms of the ordinance to extend, and does extend, to such single-party business telephones as existed or for which application had been made at the time of the passage of the ordinance of November 6, 1907, at the rate of $125 per year for unlimited use.

The city of Chicago answered the complaint and denied the jurisdiction of the commission for the reason that the ordinances of the city and of the town of Cicero constituted contracts, which it was not in the power of the commission to change or abrogate in whole or in part, and any action purporting to change or abrogate the ordinances would violate section 14 of article 2 of the constitution of Illinois and section 10 of article 1 of the constitution of the United States. The answer alleged that the telephone company has entered into contracts with 459,654 subscribers in Chicago and vicinity for its various kinds and classes of service, based upon the terms of said ordinances, and any action of the commission purporting to abrogate those contracts would be in contravention of the State and Federal constitutions. It denies that the telephone company is subject to the Public Utilities act so far as its operations within the limits of the city of Chicago are concerned. It alleges that the ordinances of the city of Chicago do not undertake to control messages originating in Oak Park for points in Chicago, and that in so far as the rates of the telephone company are for service which the telephone company is au-

thorized to furnish under the Chicago ordinances they are not unreasonable or unjustly discriminatory, either as to localities, communities or individuals. The answer alleges that the discount of twenty-five per cent allowed to the city is a part of the consideration for the right granted to the telephone company to construct and operate its plant in the streets, alleys and other public ways of the city, and denies that the ordinances are discriminatory in allowing the telephone company to charge five cents for each message up to twelve hundred for certain classes of service with a graduated scale for messages in excess of that number, whereas in other classes of service the telephone company is permitted to charge a fixed rate of $125 per year for unlimited service, alleging that such charges are, under the conditions existing in Chicago, fair and impartial for the respective kinds of service for which the charges are made. The answer denies that the Chicago ordinances are *ultra vires,* in that they relate to rates and service outside the city of Chicago, but alleges that they do not concern in any way residents of other municipalities or persons who may be subscribers for service of the telephone company outside of the city of Chicago.

A. R. Bone, general commercial superintendent of the telephone company, testified that the city of Chicago is a unit in so far as the telephone exchange system is concerned, consisting of fifty-six operating units or exchanges. The rate charged between Oak Park and the Austin exchange, which includes Columbus, is five cents, between Oak Park and Mont Clare is five cents, and between Oak Park and Cicero there is no charge to subscribers. Oak Park-Cicero business is handled through the Rockwell exchange in the Lawndale building, the Ogden avenue exchange, the Berwyn exchange and the Oak Park exchange. The rate between Oak Park and Lawndale is ten cents, being the same as the rate between Oak Park and Beverly and Rockwell. Beverly, Bellwood, Lawndale and Rockwell

are units of the telephone company similarly situated to Oak Park as Austin (including Columbus) and Mont Clare.

The various ordinances referred to in the answers were introduced in evidence and other documentary evidence was heard. The discrimination between calls from Oak Park to Cicero and from Oak Park to Berwyn, Austin, Columbus, Mont Clare and other points similarly situated is attempted to be justified under section 5 of the ordinance of the town of Cicero of November 24, 1894, sections 3 and 4 of the ordinance of December 19, 1898, and paragraph (*i*) of section 2 of the ordinance of the city of Chicago of May 26, 1913, which are as follows:

"Sec. 5. The rates for telephone exchange service in said territory shall not exceed the regular schedule of rates for like service in other places under like conditions in said Chicago Telephone Company's territory."   *   *   *

"Sec. 3. The company's rates for telephone exchange service in said territory shall not exceed its regular schedule of rates from time to time for like service under like conditions in other places in said company's territory.

"Sec. 4. The present limits of the town of Cicero shall be considered as if constituting the limits of one of the company's exchanges, so that local subscribers in one part of Cicero may communicate with local subscribers in another part without any additional charge."   *   *   *

"Sec. 2. Said Chicago Telephone Company shall not charge more than ten cents for each conversation or message up to three minutes in duration (and not more than five cents for each additional minute) transmitted from any telephone located within the city of Chicago to any other telephone which is located outside of the city of Chicago but within fifteen (15) miles of the present city hall in said city of Chicago or within one mile of the city limits and within the State of Illinois: *Provided, however,* that said Chicago Telephone Company shall not charge more than five cents for each three-minute conversation or mes-

sage (and not more than five cents for each additional three minutes or fraction thereof) between Austin and Oak Park * * * and between Mont Clare and Oak Park; and said Chicago Telephone Company shall have the right to apply the same rate between other contiguous places just within and just without the city limits when conditions, in its opinion, may justify the charge of said five-cent rate." * * *

The reverse rate of five cents from Austin and Columbus, Berwyn and Mont Clare to Oak Park was adopted so that there would be no discrimination in charge depending on the point of origin of the call. Oak Park, when the ordinance was passed, was a part of the territory of the town of Cicero.

The telephone company maintains what is called express service in regard to calls or messages where the toll charge is fifteen cents or less. Under this system the call is handled throughout by the same operator and the person calling holds the wire until the connection is made. For this service the charge is made when connection is made between the two telephones. For more distant calls where a higher rate than fifteen cents is charged the method of operation is different. The local operator connects the person calling with a recording operator, who gets from the calling person his name and telephone number and the name, address and telephone number of the person with whom he desires to talk. The person calling then hangs up the receiver and the recording operator gives the call to a long distance operator to make the connection. When the connection with the person called is made the originator of the call is again summoned to the telephone and the charge is made upon the completion of the connection. The express service is similar to local exchange service and is completed by two operators promptly in the same manner as local calls. The long distance calls require more time and more operators and are attended with greater delay. No charge is made unless a connection is obtained with the person called, while

in express service the charge is made when the telephones are connected. The city of Chicago pays the same rate for toll messages which it originates as other subscribers. The telephone company pays three per cent of its gross receipts from Chicago calls and from calls from Chicago to Oak Park and Evanston under the provisions of section 3 of the ordinance of November 6, 1907. That section provides that the term "gross receipts" shall include tolls for messages originating in Chicago for points outside of Chicago, whether on the lines of the telephone company or of other telephone companies. Section 4 of the same ordinance provides for the furnishing of telephones for local service to the city and to the board of education at twenty-five per cent discount from the regular rates. The difference in charges to business telephones of the same character in the city of Chicago is made because of the provisions of the ordinance that persons who were subscribers to a single-party business line with the right to the unlimited use of the same at $125 a year at the date of the passage of the ordinance should have the right to a continuance thereof, and that all persons applying for such class of service upon the company's regular form of application before the ordinance went into effect should be entitled to have such class of service at the rate and upon the conditions prescribed in the ordinance. The justification for all the discriminations complained of, except the different method of charging for calls known as express service and those known as long distance calls proper, is based upon the ordinances of the town of Cicero and of the city of Chicago. The order of the commission was that the telephone company should, within ninety days from the service of the order, file with the commission for its approval, in accordance with the law and the rules and regulations of the commission as to notice, a schedule of reasonable rates for both rental and toll telephone service within the territory served by the company within and without the city of Chicago, eliminating there-

from all discriminations of any kind as among, between or against individuals, communities or municipalities.

The telephone company did not question the jurisdiction of the State Public Utilities Commission, did not appeal from its decision and does not appear in this court. The city of Chicago, in the answer which it originally filed, denied the jurisdiction of the commission. It does not now, however, contend for that position. It expressly states that the issues do not involve any question of jurisdiction but involve solely the question whether or not the order of the commission was properly set aside as being unlawful. It argues the two propositions that the order of the commission was against the manifest weight of the evidence and that the commission was in error in ordering the telephone company to file its schedule eliminating all discriminations.

This appeal was prematurely taken. Section 68 of the Public Utilities act authorizes an appeal only from an order or decision of the commission made after a final hearing. The order did not make any change of rates. The commission found that the evidence did not show that the charges for messages from Chicago to any point outside the city was exorbitant or that any discrimination is made in them; that the only questions involved were discriminations in rates between districts outside the city which are similarly situated and use like service; that the provisions of the ordinances of the city of Chicago in regard to the charges from such districts to Chicago or between such districts are of no effect, but that these ordinances are observed by the telephone company and the privileges granted by them are exercised, and that in some cases ten cents is charged and in other cases five cents for the same or like service in towns or municipalities similarly situated; that the charge for a message not exceeding three minutes between Oak Park, which is outside the city of Chicago, and Austin or Mont Clare, is five cents, and between Oak Park and Beverly, Lawndale, Columbus or Rockwell is ten cents, all of these

places except Oak Park being units of the telephone company's Chicago exchange and within the city limits and similarly situated with reference to Oak Park, and that the service performed is in each case like service. The charge for a message from Oak Park to Lawndale is ten cents, while from Oak Park to Cicero there is no charge though the service is rendered by the same exchange. The territory of the telephone company lies both within and without the city of Chicago, and the evidence does not clearly show all the varying rates used by the telephone company in its service in the territory over which it extends, and the general language of the ordinances which permit the alleged discrimination in rates does not specify the points at which the larger charge is permitted, so as to enable an accurate finding to be made as to the points at which ten cents is actually charged as shown by the proofs, and hence no schedule of reasonable rates can be fixed by the commission eliminating all the objections to the schedule of rates now in effect without a further hearing, for the reason that the evidence offered had more application to Oak Park and the charges there enforced, but the record discloses and tends to show discriminations at other points similarly situated without specification, such as is necessary for the commission to fix rates which it may find to be reasonable and fair, as provided by section 36 of the Public Utilities act, and that there is in the schedule of ·rates and rules of the telephone company as now in effect, apparent discrimination in respect to toll charges both within and without the limits of the city of Chicago.

Section 41 of the Public Utilities act provides as follows: "Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates or other charges, or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursion

or commutation tickets, or that the rules, regulations, contracts or practices, or any of them, affecting such rates or other charges, or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in anywise in violation of any provision of law, or that such rates or other charges, or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates. or other charges, classifications, rules, regulations, contracts or practices to be thereafter observed and in force, and shall fix the same by order as hereinafter provided. The commission shall have power, upon a hearing, had upon its own motion or upon complaint, to investigate a single rate or other charge, classification, rule, regulation, contract or practice, or any number thereof, or the entire schedule or schedules of rates or other charges, classifications, rules, regulations, contracts and practices, or any thereof, of any public utility, and to establish new rates or other charges, classifications, rules, regulations, contracts or practices, or schedule or schedules, in lieu thereof."

Under this section the commission had the power to establish a schedule of rates which it might determine to be just, reasonable and sufficient, and it might, of its own motion or upon complaint, enter upon an investigation sufficient to enable it to acquire the information necessary for the making of such a schedule. As a step in that investigation it was within the power of the commission to require the telephone company to file the schedule which the order did require to be filed. The commission made no finding that any rate was or was not just or reasonable or that any rate constituted an unjust discrimination. Having found that apparently discriminations existed in charges made for the same service under similar circumstances, before making any order changing any rate the commission deemed it necessary to have before it a schedule of reasonable rates within the territory served by the company eliminating all discriminations. Upon the filing of the schedule the ques-

tion of fixing rates will then be before the commission for determination, and upon the hearing then to be had upon the schedule presented, the evidence already heard and such other evidence as may be produced, the commission will make its final decision, from which an appeal may be taken by any person interested. The order made by the commission was only an interlocutory order made in the progress of the hearing on the petition, and no appeal lies from it. The circuit court should therefore have dismissed the appeal. Its order will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the appeal.        *Reversed and remanded, with directions.*